NORA J. CHOROVER (Bar No. 547352)
Stern, Shapiro, Weissberg & Garin, LLP
90 Canal Street, 5th Fl.
Boston, MA 02114
Phone: 617-742-5800
Fax: 617-742-5858

Attorneys for Plaintiff
CLEAN WATER ACTION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CLEAN WATER ACTION, | ) |
| | ) |
| Plaintiff, | ) Case No. 1:09-CV-12008-GAO |
| | ) |
| v. | ) [PROPOSED] CONSENT DECREE |
| | ) |
| STATE LINE SCRAP COMPANY, | ) |
| INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

WHEREAS, Clean Water Action ("Clean Water Action") is a nationwide non-profit

public benefit corporation dedicated to working for clean, safe and affordable water, the

prevention of health-threatening pollution, the creation of environmentally-safe jobs and

businesses, and the empowerment of people to make democracy work.

WHEREAS, State Line Scrap Co., Inc. (sometimes referred to as "State Line" or the

"Company") operates a metals scrap recycling facility at 136 Bacon Street, Attleboro, MA (the

"Site" or "Facility").

WHEREAS, the Facility covers approximately 13.5 acres, and is divided into multiple

sections, including an Office and Upper Main Yard (approximately 2.8 acres), a Lower Main

Yard (approximately 2.2 acres), Turner Street Main Yard (approximately 2.9 acres), Maintenance Yard (approximately 1.5 acres), South Yard (approximately 3.6 acres), and Truck Parking Area (approximately .5 acres) all as more specifically shown in the Conceptual Storm Water Management Improvement Plans attached hereto as Exhibit A ("Conceptual Plans"). Its operations include scrap metal recycling, processing and storage. The majority of scrap metal recycling, processing and storage at the Facility occurs outdoors. The storm water management structures, improvements and technologies depicted in the Conceptual Plans are hereinafter referred to as the "Improvements."

WHEREAS, a portion of the Attleboro municipal storm drain system runs under a portion of the Site. During periods of precipitation and/or snowmelt, the portion of the municipal storm drain system that runs under the Site contains runoff from offsite locations.

WHEREAS, storm water discharges associated with certain industrial activities are regulated pursuant to the Federal Water Pollution Control Act's (the "Act's") National Pollutant Discharge Elimination System ("NPDES") and general industrial storm water Permit issued by the United States Environmental Protection Agency (the "Storm Water Permit" or "General Permit"). See U.S.C. §§ 1311(a), 1342(a), 1342(p); 65 Fed. Reg. 64746 (Oct. 30, 2000); 73 Fed. Reg. 56572 (Sept. 29, 2008).

WHEREAS, on November 23, 2009, Clean Water Action filed a complaint ("Complaint") against State Line in the United States District Court, District of Massachusetts, alleging violations of the Storm Water Permit or the Clean Water Act, 33 USC § 1251 et seq.

WHEREAS, the Complaint alleges, among other things, that storm water flows over the surfaces of the Site, collecting pollutants, and some of this storm water discharges to the Attleboro municipal storm drain system via catch basins located on the Site; that some of this storm water also runs off of driveways on the Site into streets adjacent to the Site, where it flows into the municipal storm drain system via catch basins located on the streets; and that storm water from the Site that runs into the municipal storm drain system via catch basins on the Site and in the streets discharges to the Blackstone River;

WHEREAS, State Line denies Clean Water Action's allegations that it has violated the Storm Water Permit or the Clean Water Act, 33 USC § 1251 et seq.

WHEREAS, State Line has prepared a Conceptual Stormwater Management Plan ("Conceptual Plan"), which is attached hereto as Exhibit A, and is comprised of three Proposed Stormwater Management System Concept Figures (Figures 1, 2 and 3);

WHEREAS, Clean Water Action takes no position concerning the component of the Plan that involves changes to the City of Attleboro's municipal storm drain system;

WHEREAS, the parties have decided that is in the best interest of both parties to resolve the litigation without the taking of any evidence or findings of fact or law;

WHEREAS, this Consent Decree shall be submitted to the United States Department of Justice for the 45 day statutory review period, pursuant to 33 U.S.C. § 1365(c).

NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:

## I. INJUNCTIVE RELIEF

1.     **General**. State Line agrees to implement the requirements of this Consent Decree in accordance with the terms hereof and, upon completion of the Improvements (as defined herein), operate the Facility in compliance with the applicable requirements of the Storm Water Permit and Clean Water Act and agrees to ensure that its discharges comply with applicable water quality standards.

2.     **Storm Water Management Plan.** State Line agrees to establish a Storm Water Management Plan for the Facility in accordance with the following requirements:

        a)     No later than 45 days after the Effective Date of this Decree, State Line will provide to Clean Water Action for review and comment, a Draft Storm Water Management Plan ("Draft Plan") for the treatment of storm water runoff from the Facility that incorporates and describes the following elements:

                i)   The general components of the Conceptual Plan, except that State Line may elect to omit the component of the Conceptual Plan that addresses changes to the City of Attleboro's municipal storm drain system;

                ii)  Manufacturer specifications and other details (including published qualitative and quantitative efficiency rates) of the storm water control technologies to be implemented under the Conceptual Plan;

                iii) The design and specifications for the Improvements shall prevent any increase in storm water flows from the State Line Facility to the Blackstone River in excess of levels in existence prior to the date of the Complaint ("Existing Flows"), including, without limitation, Improvements designed to (A) cause storm water runoff flows that exceed

the design capacity of the storm water management system described in the Draft Plan to be managed on site at the State Line Facility through natural infiltration or other appropriate means, and prevented from flowing into the municipal storm drain system and/or directly to the Blackstone River, and (B) elimination of bypass lines for each system.

iv) State Line shall provide verification, in the form of storm water modeling, performed by its engineering firm, that the Improvements, as built, shall cause the post-Improvement storm water flows into the Blackstone River from the Facility to be less than the Existing Flows for all storms up to the 100 year storm;

v) Measures to monitor the quality of runoff flow from the State Line Facility to the municipal storm drain system and/or to the Blackstone River;

vi) State Line's relocation of metal "turnings" storage to an off-site indoor location;

vii) A description or depiction of State Line's reduced industrial activity in the Facility's South Yard;

viii) Installation of passive tire cleaning devices, such as stone entrances, rumble strips, grates or similar structures at the ingress/egress points to the South Yard and Turner Street Yard, the adequacy of which is to be verified by visual inspection;

ix) Additional berming or grading, as necessary, to prevent sheet flow from the driveways identified in the Conceptual Plans onto public streets;

x) A description of necessary maintenance actions and schedules for maintenance of the Improvements;

xi) Identifying in the Draft Plan the locations and spot elevations of berms that will direct runoff to the storm water control structures;

xii) Specifications for the paved area in Lower Main Yard shown in the Conceptual Plan;

xiii) Elevations for the "bioswale" depicted in the Conceptual Plans located in the Maintenance Yard, to be depicted as a cross section of the Maintenance Yard; and

xiv) Storm water sampling from the storm drain located in the Truck Parking Area (although no admission that the Truck Parking Area is employed in any industrial activity within the jurisdiction of the Act shall be implied from this commitment to monitor at that location).

b)     Clean Water Action shall have 14 days from the date of receipt to provide comments to State Line on the Draft Plan. State Line shall incorporate any comments it determines are appropriate for inclusion in the Final Plan. In the event any comments are not incorporated into the Final Plan, Clean Water Action and State Line agree to negotiate in good faith regarding incorporation of such comments.

c) Within 30 days following the receipt of Clean Water Action's comments, State Line shall submit a Final Plan to relevant department(s) of the City of Attleboro, and to any other appropriate governmental agency, for approval. Thereafter, State Line will take any reasonably necessary further actions to obtain necessary permits and approvals for the Final Plan from appropriate governmental entities. Provided all Clean Water Action comments have been incorporated into the Final Plan (or otherwise addressed in a manner acceptable to both parties), Clean Water Action will not oppose State Line's application for any governmental permits required for implementation of the Final Plan.

d) Not later than six months after obtaining all necessary governmental permits and approvals for implementation of the Final Plan, State Line shall complete construction of the Improvements and commence operation and implementation of the storm water controls identified in the Final Plan. State Line shall, upon completion of construction of the Improvements, modify its Storm Water Pollution Prevention Plan, as filed ("SWPPP"), to incorporate the additional storm water control structures, measures and activities identified in the Final Plan and provide a copy of the revised SWPPP to Clean Water Action. State Line shall comply with this deadline for completion unless the completion is prevented or delayed by events which constitute a force majeure, in which case it shall be extended by the period of delay caused by force majeure. A force majeure is an event or condition beyond State Line's control, such as, but not limited to, adverse weather conditions, unavailability of materials, war, strikes, civil disturbance, fire, flood, act of God, which arises from causes not reasonably foreseeable and beyond the control of State Line or its consultants, engineers, or contractors which could not be

overcome by due diligence and which delays or prevents compliance with this deadline for completion. Force majeure events do not include unanticipated or increased costs of performance, financial inability to perform, or failure of a contractor to perform or failure of a supplier to deliver unless such failure is, itself, the result of a force majeure. State Line shall notify Clean Water Action by telephone within 10 business days and in writing within 15 business days after it becomes aware of events which it knows or should reasonably know may constitute a force majeure. The notice shall provide an estimate of the anticipated length of delay, a description of the cause of delay; and a description (including timetable) of measures taken or to be taken by State Line to minimize delay.

e) State Line shall notify Clean Water Action in writing within 5 business days after it becomes aware that one or more governmental entities from which an approval is necessary will not approve the Final Plan in the form it was submitted. Should this occur, the parties will negotiate in good faith, on a timely basis, in an attempt to agree on

> i) modifications of the Final Plan that may be necessary to obtain the required governmental approvals and/or
>
> ii) any other modifications of this Consent Decree that may be necessary in light of State Line's inability to obtain government approvals of its Plan.

The foregoing shall not restrict State Line from agreeing to minor revisions to the Final Plans in the course of obtaining governmental approvals, provided such revisions do not materially change the substance or performance of the Final Plans.

**3. Operational Commitments.** State Line agrees to the following operational commitments to be implemented as of the dates specified below and maintained throughout the term of this Consent Decree:

a) Following completion thereof, State Line shall maintain in good working order all Improvements made at the Facility pursuant to the Final Plan.

b) Contemporaneously with the SWPPP revisions described in paragraph 2(d), State Line shall implement a revised Facility maintenance schedule consistent with this Consent Agreement, including employee training materials and inspection schedules and logs, which schedules and logs shall be incorporated into the SWPPP. Within 30 days of the Effective Date of this Decree, State Line will amend its SWPPP to require maintenance of appropriate logs of all cleaning, sweeping, maintenance and inspection activities at the Facility pertaining to storm water best management practices, which shall include the name of the person or persons conducting the activity, the date such activities took place, and whether such activities took place in the morning or in the afternoon.

c) During the term of this Decree, State Line shall conduct quarterly samples of its storm water discharges in accordance with Section 6 of the General Permit and in accordance with the procedures set forth in EPA's Industrial Stormwater Monitoring and Sampling Guide (2009). Quarterly samples shall be conducted during all three years that this Decree is in effect. Sampling events shall be preceded by at least three working days without storm water discharges. State Line shall provide Clean Water Action with copies of the analytical results of its sampling within seven days of receiving them.

d)      State Line shall permit representatives of Clean Water Action to perform up to six
site visits to the Facility during normal daylight business hours during the term of this Consent
Decree, provided that Clean Water Action provides State Line with at least 48 hours prior written
notice. Such inspections shall be conducted in a manner so as to minimize any adverse impact
on the operation of State Line's business conducted at the Facility. Clean Water Action
representatives shall be accompanied by State Line personnel at all times during the visit and
shall adhere to State Line's health and safety requirements.

e)      During the term of this Decree, State Line shall provide Clean Water Action with
copies of all documents it submits to EPA, the Commonwealth of Massachusetts and/or the City
of Attleboro concerning the Facility's storm water discharges, including but not limited to all
documents and reports submitted as required by the Storm Water Permit. Such documents and
reports shall be mailed to Clean Water Action contemporaneously with submission to the
governmental entity.

f)      State Line shall improve its pavement sweeping and inspection program to better
control the buildup of solids, oil, grease and other materials at all areas of the Facility with
impermeable surface. The Final Plan shall contain a sweeping program, which shall require the
following sweeping program during the period beginning each spring at the time of final snow
melt for the season and continuing through the first major snow event each fall, (i) monthly
sweeping of all paved areas (ii) bi-weekly sweeping of paved areas within 100 feet of all
driveway entrances and exits, and (iii) additional sweeping as conditions require in order to
reduce, to the extent reasonably possible, the transport of visible debris, oil, grease and/or

particulate matter from the Facility onto roads adjacent to the Facility. Within 30 days of the Effective Date of this Decree, State Line shall modify its SWPPP to incorporate these Facility sweeping provisions and will commence implementing the new sweeping program.

    h)    Within 45 days of the Effective Date of this Decree, State Line shall (i) cease storing metal turnings at the South Yard, and will store such materials at an off-site indoor location; and (ii) cease all industrial activities, including material storage outside of the boundaries of the South Yard as depicted in the Conceptual Plans.

## II.    MITIGATION FEES AND COSTS

1.    **Mitigation.**    As mitigation of the violations alleged in Clean Water Action's Notice and Complaint, State Line shall pay the sum of $90,000 to the Blackstone River Coalition for projects or activities benefitting water quality in the Blackstone River watershed (the "Payment"). The contact for that group is Peter Coffin, Blackstone River Coalition, P.O. Box 70477, Worcester, MA 01607. The Payment shall be conditioned on the following: (a) the Payment or any portion thereof shall not be disbursed or otherwise granted directly or indirectly to Clean Water Action; and (b) projects funded by the Payment shall be designed to benefit water quality within 30 miles of the Facility. Payments shall be made in two installments (a) $45,000, within 15 days of the Effective Date and $45,000 within 15 days following receipt by State Line of written confirmation from Clean Water Action that it will not oppose State Line's application for any governmental permits required for implementation of the Final Plan. Such payments shall be made by certified check or money order, made out to the groups and/or projects identified above

and be delivered by certified mail, return receipt requested or an overnight courier with a parcel tracking system. A copy of such payment shall be provided to Clean Water Action.

2. **Fees and Expenses**.

a) Within 15 days of the Effective Date, State Line shall reimburse Clean Water Action in the amount of $75,500 to defray Clean Water Action's investigation fees and costs, expert fees and costs, reasonable attorneys' fees, and all other costs incurred as a result of investigating the activities at the Facility, bringing these matters to State Line's attention, and negotiating a resolution of this action in the public interest. Payment shall be made by certified check or money order, made out to Stern, Shapiro, Weissberg & Garin, LLP, Client Trust Account, and be delivered by certified mail, return receipt requested to Nora J. Chorover, at the address listed below.

b) State Line shall contribute $5,000 per year for each of the three years covered by the Consent Decree, to a compliance monitoring fund maintained by Clean Water Action to defray plaintiff's reasonable investigative, expert, consultant and attorneys' fees and costs associated with monitoring State Line's compliance with this Consent Decree. Compliance monitoring activities may include, but shall not be limited to, review and comment on the Draft Plan, site inspections, review of sampling and monitoring reports, discussions with representatives of State Line concerning compliance with this Consent Decree and water quality sampling. The first such payment shall be made payable to Stern, Shapiro, Weissberg & Garin, LLP, Client Trust Account, and be delivered within 15 days following receipt by State Line of written confirmation from Clean Water Action that it will not oppose State Line's application for any governmental

permits required for implementation of the Final Plan. Payment shall be made by certified mail, return receipt requested to Nora J. Chorover, at the address listed below. The second and third annual payments shall be due on November 1, 2011 and November 1, 2012, respectfully. In the event that Clean Water Action has not expended all of the compliance monitoring funds for compliance activities at the Facility in a given year, any funds remaining shall be rolled over into the next year and State Line's payment under this paragraph for the next year shall be reduced accordingly. If any unused compliance monitoring funds remain at the expiration of this Consent Agreement such funds shall be returned to State Line within fourteen days of the expiration date.

## III.   MUTUAL RELEASE

**1.    Release of State Line.**    Upon entry of this Consent Decree, Clean Water Action, on its own behalf and on behalf of its members, subsidiaries, successors, assigns, directors, officers, agents, attorneys, representatives, and employees, releases State Line (and its agents, attorneys, representatives, employees, predecessors, successors, and assigns) from, and waives all claims, whether known or unknown, for damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed in this Action, for the alleged failure of State Line to comply with the Clean Water Act at the Facility, up to the Effective Date of this Consent Decree. Clean Water Action does not release any claims to enforce any term of this Consent Decree.

2. **Release of Clean Water Action.**    State Line, on its own behalf and on behalf of its agents, attorneys, representatives, employees, and assigns, releases Clean Water Action (and its members, subsidiaries, successors, assigns, directors, officers, agents, attorneys, representatives,

and employees) from, and waives all claims, whether known or unknown, which arise from or

pertain to this Action, including all claims for fees (including fees of attorneys, experts, and

others), costs, expenses or any other sum incurred or claimed or which could have been claimed

for matters associated with or related to this Action. State Line does not release any claims to

enforce any term of this Consent Decree.

## IV.    DISPUTE RESOLUTION

If a dispute under this Consent Agreement arises, or either party believes that a breach of this

Consent Agreement has occurred, then the parties shall meet and confer within seven days of

receiving written notification from the other party of a request for a meeting. The time for a

meeting may be extended by mutual agreement of the parties. The purpose of the meeting will

be to determine whether a breach has occurred and to develop a mutually agreed upon plan,

including implementation dates, to resolve the dispute or cure the breach. If the parties fail to

meet and confer or the meet-and-confer does not resolve the issue, after at least seven days have

passed after the meet-and-confer occurred or should have occurred, the parties may mutually

agree to enter into a mediation process, the cost of which shall be acceptable to, and shall be

borne by, State Line. Mediation shall be completed within sixty-five (65) days from the date the

parties agree to enter into mediation or as soon thereafter as is possible. The mediator shall be

selected by agreement of the parties. In the event the parties are unable to agree on a mediator,

then each party shall select a mediator and the two mediators so selected shall choose a third

mediator to serve as the mediator. If the parties fail to resolve the issue through mediation, or if

either party chooses not to enter into mediation, either party shall be entitled to all rights and

remedies under the law, including filing a motion with the United States District Court for the District of Massachusetts, which shall retain jurisdiction of this Action for the limited purposes of enforcement of the terms of this Consent Decree. The provisions for recovery of costs and attorneys fees set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, shall apply to the District Court's resolution of any such motion.

## V. **MISCELLANEOUS PROVISIONS**

**1. Reservation of Rights**. The parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Nothing in this Consent Decree shall be construed as, and State Line expressly does not intend to imply, any admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Decree constitute or be construed as an admission by State Line of any fact, finding, conclusion, issue of law, or violation of law. However, this paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the parties under this Consent Decree.

**2. Term**. The Effective Date shall be the date this Consent Decree is approved and entered by the Court. The Consent Decree shall have a term of three (3) years.

**3. Counterparts**. The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

**4. Severability.** In the event that any of the provisions of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

**5. No Waiver of Defenses**. State Line does not, by entering into this Consent Decree, waive any defenses or rights with respect to any allegation or claim asserted by anyone, including Clean Water Action, of any kind or nature arising or alleged after the date State Line signs this Consent Decree, including any allegations that State Line has breached the terms of this Consent Decree, and State Line does not, by entering into this Consent Decree, waive any defenses or rights with respect to any allegation or claim asserted by the EPA or the Commonwealth of Massachusetts. This Consent Decree reflects an agreement between State Line and Clean Water Action exclusively and there are no intended third party beneficiaries to this agreement.

**6. Construction of Terms**. The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.

**7. Authorization**. The undersigned are authorized to execute this Consent Decree on behalf of their respective parties and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

**8. Integration**. This Consent Decree is a complete statement of the agreement of the parties with respect to the subject matter hereof and all prior or contemporaneous written or oral agreements or commitments are merged herein. All agreements, covenants, representations and warranties, express or implied, oral or written, of the parties concerning the subject matter of this Consent Decree are contained herein.

**9. Notices**. Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Clean Water Action pursuant to this Consent Decree shall be hand delivered or sent by U.S. Mail, postage prepaid, and addressed as follows:

Nora J. Chorover, Attorney for Clean Water Action

Stern, Shapiro, Weissberg & Garin, LLP
90 Canal Street, 5th Floor
Boston, MA 02114

Any notices or documents required or provided for by this Consent Decree or related thereto that

are to be provided to State Line pursuant to this Consent Decree shall be sent by U.S. Mail,

postage prepaid, and addressed as follows:

David L. Bourque
President
State Line Scrap Co., Inc.
136 Bacon Street
Attleboro, MA

Each party shall notify the other parties of any change in their contact information within 14 days
of any such change.

**10.** **Fax Signatures.** Signatures of the parties transmitted by facsimile are binding.

**11.** **Modification.** If for any reason the Court should decline to approve this Consent Decree

in the form presented, the parties shall agree to work together to modify the Consent Decree

within 30 days to endeavor to make it acceptable to the Court.

**12.** **Submission to Court.** The parties agree to submit this Consent Decree to the Court for

its approval and entry as a final judgment. The date of entry of final judgment shall be the

"Effective Date."

Dated and Entered this $3^{\mathcal{A}}$ day of *March*, 2011

_____
United States District Judge

Dated:

 10 28 10 , 2010

Clean Water Action]
By: _____
    Cindy Luppi
    Its New England Co-Director


Dated:

_____, 2010

State Line Scrap Co., Inc.

By: _____
    David L. Bourque
    Its President

{W1179653144}

Dated:

_____, 2010

Clean Water Action

By: _____

    Cindy Luppi
    Its New England Co-Director


Dated:

_10/29/10_____, 2010

State Line Scrap Co., Inc.

By: _____

    David L. Bourque
    Its President

**Exhibit A**



Figure caption:

Statewide Scrap Co., Inc.
138 Elston Street
So. Attleboro, MA

Proposed Stormwater
Management System Concept

Fig. 1



Fig. 2

Shalaline Scrap Co., Inc.
138 Bacon Street
So. Attleboro, MA

Proposed Stormwater
Management System Concept

PROGRESS PRINT

888 Worcester Street, Suite 240
Wellesley, Massachusetts 02482
P 781-489-5004
F 781-489-7824
www.essgroup.com

Engineers
Scientists
Consultants

SCALE IN FEET



PROGRESS PRINT

ESS GROUP, INC.

888 Worcester Street, Suite 240
Wellesley, Massachusetts 02482
p. 781.489.5050
f. 781.489.5024
www.essgroup.com

Stateline Scrap Co., Inc.
136 Bacon Street
So. Attleboro, MA

Proposed Stormwater
Management System Concept

Fig. 3

SCALE IN FEET

TOTAL WATERSHED AREA = 28,598 SF
IMPERVIOUS = 27,474 SF

BIO-SWALE/POND AREA
DESIGNED FOR 1" STORM (WQV, FIRST
FLUSH)
AREA = 1,126 SF

ROOF AREA = 10,202 SF
(COLLECT IN RAIN BARRELS, RELEASE AFTER STORM)

TOTAL WATERSHED AREA = 26,579 SF
IMPERVIOUS = 24,356 SF

BIO-SWALE/POND AREA
DESIGNED FOR 1" STORM (WQV,
FIRST FLUSH)
AREA = 1,196 SF

APPROX. WATER LEVEL = 63.0